# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER M. STONE, | Civil Action No. 13 – 401 |
| Plaintiff, | |
| v. | Chief Magistrate Judge Lisa Pupo Lenihan |
| SUPERINTENDENT LOUIS FOLINO and LORINDA WINFIELD, *Deputy Superintendent for Facilities Management*, | ECF No. 14 |
| Defendants. | |

## MEMORANDUM OPINION

This matter comes before the Court on the Defendants' Motion to Dismiss, which has been converted into a Motion for Summary Judgment. (ECF Nos. 14, 16.)[1] For the following reasons, Defendants' Motion will be granted.

## I. BACKGROUND

Christopher M. Stone ("Plaintiff") is a state prisoner currently confined at SCI-Pittsburgh. He initiated this lawsuit on March 19, 2013, claiming that Defendants violated his rights under Title II of the Americans with Disabilities Act ("ADA"), 41 U.S.C. § 12101 *et seq*, while he was an inmate at SCI-Greene. (ECF No. 1-1.) Specifically, in his Complaint he alleges

---

[1] On 9/16/13 (ECF No. 16) Plaintiff was advised that the Motion to dismiss would be treated as a Motion for Summary Judgment and Plaintiff was ordered to respond no later than 10/28/13. That Order was resent to Plaintiff following a telephone conference on another matter wherein the Court became aware that Plaintiff had been moved. See docket entry dated 10/08/13. No response was received.

1

that he was removed from his dietary job because he has diabetes, which fact was confirmed by Deputy Winfield in response to Plaintiff's grievance appeal. (ECF No. 11.)

## II. STANDARD

Defendants assert that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996). Though the PLRA, Congress amended 42 U.S.C. § 1997e(a) to prohibit prisoners from bringing an action with respect to prison conditions pursuant to 42 U.S.C. § 1983 or any other federal law, until such administrative remedies as are available are exhausted. Specifically, the act provides, in pertinent part, as follows:

> No action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C. § 1983), or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion is required under this provision regardless of the type of relief sought and the type of relief available through administrative procedures. *See* Booth v. Churner, 532 U.S. 731, 741 (2001). In addition, the exhaustion requirement applies to all claims relating to prison life which do not implicate the duration of the prisoner's sentence, including those that involve general circumstances as well as particular episodes. *See* Porter v. Nussle, 524 U.S. 516, 532 (2002). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies prior to filing the action. *See* Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjunctive system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Porter, 534 U.S. at 525). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Id. at 83; *see also* Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion). Courts have concluded that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal courts. *See*, *e.g.*, Booth v. Churner, 206 F.3d 289 (3d Cir. 2000); Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See* Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F.

3

App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis, 49 F. App'x at 368; *see also* Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp, 219 F.3d at 281 (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and correctional officers impeded filing of grievance).

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances, inmate requests to excuse a failure to exhaust are frequently rebuffed by the courts. Thus, an inmate cannot excuse a failure to timely comply with these grievance procedures by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. Harris, 149 F. App'x at 59. Nor can an inmate avoid this exhaustion requirement by merely alleging that the Department of Corrections policies were not clearly explained to him. Davis, 49 F. App'x at 368. Thus, an inmate's confusion regarding these grievances procedures does not, standing alone, excuse a failure to exhaust. Casey v. Smith, 71 F. App'x 916 (3d Cir. 2003). Moreover, an inmate cannot cite to alleged staff impediments to grieving a matter as grounds for excusing a failure to exhaust, if it also appears that the prisoner did not pursue a proper grievance once those impediments were removed. Oliver v. Moore, 145 F. App'x 731 (3d Cir. 2005) (failure to exhaust not excused if, after staff allegedly ceased efforts to impede grievance, prisoner failed to follow through on grievance).

No analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirement, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

## III. DISCUSSION

Within DC-ADM 804, the Inmate Grievance System Policy, the Pennsylvania Department of Corrections ("DOC") established a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution.[2] Within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See* Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 2000) (outlining

---

[2] The policy was last amended on December 1, 2010. The previous version of the policy only allowed ten working days to appeal an adverse initial review decision to the facility manager.

Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, No. 08-23, 2010 U.S. Dist. LEXIS 127124, at *21-25 (M.D. Pa. Dec. 1, 2010) (same).

Defendants concede that Plaintiff filed a grievance about losing his dietary job – Grievance #409652. (ECF No. 18 at p.3.) That grievance was denied by the Vocational Coordinator on May 10, 2012, who indicated, *inter alia*, that Medical had advised the Inmate Employment Office that Plaintiff was no longer medically approved to work in Food Services. Id. at p.4. Plaintiff appealed to the Superintendent, and Deputy Winfield responded on Superintendent Folino's behalf on June 29, 2012. Id. at pp.5-6. Significantly, Deputy Winfield explained that Plaintiff was removed from his dietary job because "it [was] impossible for the Dietary Department to operate around the required schedule" to "properly manage" Plaintiff's diabetes, which required that Plaintiff eat and that his medication be administered "at certain times during the day." Id. at p.6. While Plaintiff appealed to final review, his appeal was rejected because he failed to submit the required information and because his appeal exceeded 2 single-sided pages. Id. at p.7. Plaintiff was given 15 days to submit the required documents and correct his errors, but he failed to do so. Therefore, his appeal was dismissed on September 6, 2012. Id. at p.8.

By failing to comply with the DOC's appeal procedures as provided for in DC-ADM 804, Plaintiff did not properly exhaust his claim.[3] Defendants' Motion for Summary Judgment will thus be granted. A separate order will issue.

Dated: August 8, 2014

---

[3] Plaintiff did not respond to Defendants' Motion for Summary Judgment or their Concise Statement of Material Facts. Thus, these facts are deemed to be admitted by Plaintiff. *See* Enigh v. Miller, No. 08-1726, 2010 WL 2926213 (W.D. Pa. July 23, 2012) (collecting cases).

/s/ Lisa Pupo Lenihan

Lisa Pupo Lenihan  
Chief United States Magistrate Judge

cc: Christopher M. Stone  
    JV0262  
    SCI Pittsburgh  
    P.O. Box 99991  
    Pittsburgh, PA  15233  
    *(Via First Class Mail)*

    Counsel of Record  
    (*Via CM/ECF Electronic Mail*)